UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher James Cullins, a/k/a Christopher James Cullins, Jr., | ) C/A No.: 2:12-1982-RMG-BHH )  ) |
| Plaintiff, | ) ) |
| vs. | ) Report and Recommendation ) |
| Officer Cussandra Wilson, Officer K. Graham and Officer A. Lewis/Evans, | ) ) ) |
| Defendants. | ) |

_____

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon two motions: (a) Defendant Wilson's Motion for Summary Judgement ("Wilson") (Dkt. No. 45); and (b) Motion for Summary Judgment filed by all Defendants except Defendant Wilson ("Defendants"). (Dkt. No. 46).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about July 17, 2012. (Dkt No. 1). On December 18, 2012, both Defendants and Wilson filed Motions for Summary Judgment (Dkt Nos. 45 and 46). By order filed December 19, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motions. (Dkt No. 47). Plaintiff filed his Response in Opposition to the motions on or about March 18, 2013. (Dkt.

1

No. 63). Wilson filed her Reply to Plaintiff's Response to Motion for Summary Judgment on March 28, 2013. (Dkt. No. 64).

## PROCEDURAL FACTS

### (*Overview*)

Plaintiff, Christopher James Cullins, who at all times relevant to his Complaint was a detainee housed at the Sumter-Lee Regional Detention Center ("SLRDC"), brings this action alleging that Defendants and Wilson violated his Constitutional rights. According to the Plaintiff, on May 10, 2012, while he was housed in Kilo ("K") pod - a two story pod with open cubes housing at least thirty inmates[1] - Defendant Wilson physically abused him by striking him in the neck with her hand with the purpose to cause harm. Plaintiff alleges that a verbal altercation preceded the physical assault, but he alleges that Wilson struck him for exercising his First Amendment rights. According to the Complaint, Wilson and Defendant Graham conspired to cover up the incident, and Defendant Evans failed to take action against Wilson.  Plaintiff also alleges Defendant Graham was deliberately indifferent to his safety, and failed to protect him. Additionally, Plaintiff alleges Defendants and Wilson were responsible for his placement in punitive segregation after the incident, without due process.

### (The Complaint)

Specifically, Plaintiff raises six (6) causes of action: In his First Cause of Action, Plaintiff alleges Wilson deprived him of his right under the First Amendment to protest her abusive treatment. (Dkt. No. 1 at 4). Plaintiff maintains in his Second Cause of Action that

---

[1]See Cullins Deposition, pp. 42-43.

Wilson struck and hit him in the neck area, with ill will and intent to harm and punish him, in violation of the Eighth Amendment. Id. In his Third Cause of Action, Plaintiff alleges Defendant Graham was deliberately indifferent to his safety, failed to protect him, and assisted Wilson to cover up her alleged misconduct in violation of the Eighth Amendment. Id. at 4 and 5. Plaintiff contends in his Fourth Cause of Action that Wilson and Defendants placed him in punitive segregation without due process, and acted together to violate his Constitutional rights to be free of physical abuse, and to exercise his Free Speech rights, under the First, Eighth, and Fourteenth Amendments. Id. at 5. In his Fifth Cause of Action, he claims that all Defendants punished him unreasonably and deprived him of his right to have a hearing. Id. at 5 and 6. In his Sixth Cause of Action he claims that Officer Evans violated his right to be free from unreasonable punishment and negligently failed to take action against Officer Wilson for violence committed in Evans' presence. Plaintiff also alleges Evans acquiesced in Plaintiff's punitive segregation. Id. at 6. Plaintiff seeks money damages and injunctive relief. Id. at 7.

## **APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597

3

F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Wilson and Defendants have each moved for summary judgment (Dkt. No. 45 and 46). Wilson has submitted the following attachments to her Motion: her own affidavit (Dkt. No. 45-2); the affidavit of Ezzard Luke (Dkt. No. 45-3); the affidavit of Christopher Moore (Dkt No. 45-4); the affidavit of Daryl McGhaney (Dkt. No. 45-5); the affidavit of Travis Major (Dkt. No. 45-6); and excerpts from the Deposition of the Plaintiff (Dkt. No. 45-7). Defendants have submitted the following attachments to their Motion: the affidavit of Keith Graham (Dkt. No. 46-3); and excerpts from the Deposition of the Plaintiff (Dkt. No. 46-2). The undersigned will consider the arguments presented in turn.

**A.    Motion for Summary Judgment filed by Wilson (Dkt. No. 45)**

Defendant Wilson asserts that she has not violated any of the Plaintiff's rights. Specifically, on May 10, 2012, Defendant Wilson states that she was preparing K pod for "lights out" and reminded the inmates that any talking after the lights were turned off would result in a transfer to Bravo ("B") pod, also know as administrative segregation, for disobeying the rules of the facility. (Dkt. No. 45-2, par. 4); Cullins, Deposition, pp. 26, 31-32, 36-37. Wilson contends that all inmates know they must not be disrespectful to an officer, and obey all orders given. (Dkt. No. 45-2, par. 16); Cullins, Deposition, pp. 39-40.

4

Wilson alleges she was speaking to the inmates when the Plaintiff began to speak to her in a loud, boisterous, and disrespectful manner, using profanity, even though Wilson had not directed her statements specifically towards the Plaintiff. (Dkt. No. 45-2, par. 5); (Dkt. No. 45-6, par. 3); Cullins, Deposition, pp. 78, 156. Defendant Wilson gave the Plaintiff a verbal warning, ordering him not to speak to her in a loud and disrespectful manner, however, the Plaintiff refused to follow her order. (Dkt. No. 45-2, par. 6); (Dkt. No. 45-6, par. 4). Defendant Wilson then radioed her supervisor that the Plaintiff needed to be escorted to B pod. (Dkt. No. 45-2, par. 6); (Dkt. No. 45-6, par. 4). According to Defendant Wilson, the Plaintiff appeared to get very angry and started to move down the stairs towards Defendant Wilson at a rapid pace and in an aggressive manner. (Dkt. No. 45-2, par. 9); (Dkt No. 45-6, par. 5). At the same time, the other inmates started joining in the disturbance. (Dkt. No. 45-2, par. 8 and10); (Dkt. No. 45-6, par. 5); Cullins, Deposition, pp. 196-197. The Plaintiff reached the bottom of the stairs and moved very close to Defendant Wilson while pointing his finger in her face as if he was going to strike her. Plaintiff continued to disobey Wilson's orders. (Dkt. No. 45-2, par. 11); (Dkt. No. 45-6, par. 6). In order for Defendant Wilson to maintain control of the situation, she attempted to grab the Plaintiff by his uniform collar and push him out of her personal space to maintain her safety and the security of the pod. (Dkt. No. 45-2, par. 12); Two other officers then intervened and assisted in gaining control of the situation. (Dkt. No. 45-2, par.15); (Dkt. No. 45-6, par. 7); (Dkt. No. 45-4, par. 5).

Defendant Wilson asserts that she never used excessive force on the Plaintiff, and that the force she used in this instance was justified and in accordance with policy and her training. (Dkt. No. 45-2, par. 13-14, 24). Further, Defendant Wilson alleges she felt

endangered when Plaintiff came down the stairs at a fast pace after previously refusing all the orders she had issued to him. Id. at 14.

     1.    *First Amendment claim*

Plaintiff alleges he was physically assaulted for exercising his First Amendment rights. Specifically, he contends his First Amendment right to free speech was violated when the detainees in his pod were collectively addressed in a disrespectful manner by Wilson. Plaintiff further contends that when he complained to Wilson about the manner in which she spoke to the detainees, she struck him in the neck.

Wilson seeks summary judgment on this claim contending that Plaintiff spoke to her in a disrespectful manner, despite her orders to refrain from doing so, and when he failed to comply, she requested assistance to have Plaintiff removed from the pod. Wilson alleges Plaintiff then became angry and moved toward her in an aggressive manner, pointing his finger in her face, whereupon she grabbed Plaintiff by the collar and pushed him out of her personal space.

In Plaintiff's Reply to Wilson's Motion for Summary Judgement, he claims "not once has ... Wilson disputed or contested ... Plaintiff's allegations made of her use of obscene and degrading language." (Dkt. No. 63, par. 21, 83, 85-86).

While prisoners do not forfeit all constitutional rights upon their imprisonment, Bell v. Wolfish, 441 U.S. 520, 545 (1979), incarceration necessarily limits a prisoners' privileges and rights, which "arises both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)(overruled on other grounds); citing Pell v. Procunier,

417 U.S. 817, 822 (1974). The Supreme Court has repeatedly upheld prison regulations restricting prisoners' First Amendment rights. See, e.g., Beard v. Banks, 548 U.S. 521 (2006); Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987); Bell, 441 U.S. 520 (1979). In Turner, the Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. The Supreme Court articulated four factors to determine if a prison regulation is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. Id. at 89–91 (citation omitted). The Supreme Court has also advised that when determining whether a prison regulation is reasonable, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126 (2003).

Defendant Wilson filed several affidavits along with her Motion for Summary Judgment. The first affidavit is her own, wherein she states that she "gave the Plaintiff a verbal warning not to speak to [her] in a loud, boisterous, and disrespectful manner (Dkt. No. 45-2, par. 6). Wilson avers she was "trying to maintain order and security in the pod, and make sure all inmates complied with the rules of the pod relating to talking after lights out." Id. at 19.

7

Wilson's statements are corroborated by the affidavit of Travis Major ("Major"). (Dkt. No. 45-6). According to Major, also a detainee at the SLRDC, when "Wilson called for 'lights-out,' [Plaintiff] "began to speak to [Wilson] in a loud manner." Id. at par. 3. Major also states that Wilson gave Plaintiff a verbal warning to be quiet, but Plaintiff "refused to stop." Id. at par. 4. According to the affidavit submitted by Major, Plaintiff "continued to argue with [Wilson], and she told him to be quiet and step away. [Plaintiff] stayed close to Wilson and continued arguing. Id. at par. 6. During Plaintiff's deposition, Plaintiff testified that detainees must obey orders given by a corrections officer. Cullins, Deposition, p. 39.

In evaluating the connection between the governmental interest and SLRDC policies to determine if there are alternative means which could accommodate detainees, the SLRDC polices at issue - that inmates must not communicate with each other after "lights-out," and must obey orders given by correctional officers - are a legitimate, and not unduly restrictive means to maintain the order, safety, and security of the institution. An incarcerated individual's rights are not retained if they are inconsistent with the incidences implicit in incarceration. Overton, 539 U.S. at 131.

Furthermore, Plaintiff's true complaint does not concern the regulations he was asked to obey. Rather, Plaintiff objects to the use of what he perceived as improper language by Wilson. The use of abusive language, however, is never a basis for a civil rights action. Batista v. Rodriguez, 702 F.2d 393, 398 (2d Cir. 1983)("[m]ere rudeness ... however unpleasant, does not rise to the level of a cognizable 'chill' on the exercise of First Amendment rights"); Cameron v. Bonney, No. 12-7836, 2013 WL 1800423 (4th Cir. April 30, 2013)("verbal abuse by a prison guard does not give rise to a cause of action under § 1983") citing Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)(abrogated on other

8

grounds by <u>Wilkins v. Gaddy</u>, 130 S. Ct. 1175 (2010)). Thus - assuming for argument's sake without deciding - even if Wilson made statements which Plaintiff found to be offensive, Wilson is entitled to summary judgment on Plaintiff's First Amendment claim.

2.    *Excessive Force claim*

Plaintiff alleges Wilson physically abused him by striking him in the neck with her hand with the purpose to cause harm.

Wilson contends that when Plaintiff failed to obey her orders he came "down [the stairs] toward me ... at a rapid pace." (Dkt. No. 45-2 at par. 9). She states she "was concerned that the incident might get out of control and other inmates might join in." <u>Id</u>. Wilson claims "inmates started coming up to the red line and joining in with the Plaintiff's yelling." <u>Id</u>. at par. 10. Wilson also alleges she "perceived a very real danger" because "Plaintiff appeared angry." <u>Id.</u>  at 14. Wilson avers she "attempted to grab the Plaintiff by his uniform collar and push him out of [her] personal space to maintain my safety and the security of the pod," and was unsure "if [she] made contact with his face or neck, as it happened very quickly." <u>Id</u>. at par. 12.

Plaintiff indicates in his Reply to Wilson's Motion for Summary Judgment that "absolutely no one other than ... Wilson has corroborated [her] ... allegations of Plaintiff's threatening and combative behavior...." and he maintains he was not behaving in such a manner. (Dkt. No. 63, par. 27, 60-63, 65-66, 102).

"[E]xcessive force claims of a pretrial detainee ... are governed by the Due Process Clause of the Fourteenth Amendment." <u>Orem v. Rephann</u>, 523 F.3d 442, 446 (4th Cir. 2008) citing <u>Young v. Prince George's County, Maryland</u>, 355 F.3d 751, 758 (4th Cir.2004) (quoting <u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir.1998) (abrogated on other grounds

by Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010)). To succeed on an excessive force claim under the Due Process Clause of the Fourteenth Amendment, a Plaintiff must show that a Defendant "inflicted unnecessary and wanton pain and suffering." Taylor, 155 F.3d at 483 (citing Whitley v. Albers, 475 U.S. 312, 320 (1986)). "In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Orem, 523 F.3d at 446, citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)(abrogated on other grounds by Graham v. Conner, 490 U.S. 386, 387 where Graham court found Glick test incompatible with Fourth Amendment analysis). "The source of constitutional protection against the use of excessive force on a pretrial detainee is the detainee's liberty interest in bodily security, grounded in the [F]ifth and [F]ourteenth [A]mendments. " Justice v. Dennis, 793 F.2d 573, 576 (4th Cir. 1986).

In the instant case, Defendants are entitled to summary judgment on Plaintiff's claim for excessive force. Wilson averred that she "gave ... Plaintiff a verbal warning not to speak ... in a loud, boisterous, and disrespectful manner, (Dkt. No. 45-2, par. 6), and was "trying to maintain order and security in the pod...." Id. at par. 19. Major's affidavit corroborates that Wilson gave Plaintiff a verbal warning to be quiet, but Plaintiff "refused to stop," (Dkt. No. 45-6, par. 4), and "continued to argue with [Wilson], [even though] she told him to be quiet and step away. [Plaintiff] stayed close to Wilson and continued arguing." Id. at par. 6.

Wilson's affidavit reveals that Plaintiff behaved "in an aggressive manner. (Dkt. No.

10

45-2, par. 9); (Dkt. No. 45-6, par. 5). The Plaintiff reached the bottom of the stairs and moved very close to Wilson while pointing his finger in her face as if he was going to strike her. Wilson once again told Plaintiff to back away, but he refused. (Dkt. No. 45-2, par. 11); (Dkt. No. 45-6, par. 6). Given that Plaintiff ignored Wilson's warnings, and approached her in an aggressive manner as if he intended to strike her, there was a need for application of force.

In her Motion for Summary Judgment, Wilson attaches the affidavit of Ezzard Luke ("Luke"). (Dkt. No. 45-3). Luke states that he is employed by the Sheriff of Charleston County at the Charleston County Detention Center ("CCDC") as a training officer and was hired by the Defendants to review and evaluate Plaintiff's allegations to determine whether the officers involved in the incident with Plaintiff acted in accordance with the standards and training for use of force. (Dkt. No. 45-3, par. 1-2).

Luke states that an officer is trained to consider the totality of the circumstances in determining how to respond to an inmate who is objecting to her orders, and this consideration encompasses whether the officer believes the inmate is a threat to her, or to the safety of the facility, when deciding whether or not to use force. (Dkt. No. 45-3, par. 4). Luke also indicates that an officer must "bring an inmate into compliance, and out of [their] reactionary gap, before the other inmates in the pod become even more disruptive." (Dkt. No. 45-3, par. 9). According to the affidavit submitted by Luke, an officer's "perceptions of a threat would be heightened by the Plaintiff's failure to follow any of her orders leading up to the incident, and [also] the fact that the Plaintiff was within her reactionary gap, which is a minimum of six feet." (Dkt. No. 45-3, par. 6). Luke states that "[a]fter verbal warnings, training indicates that the use of a push or shove, or an open hand

11

strike, is the next lowest level of force when trying to gain control of an inmate who is not following orders, or is posing a threat to the officer or the institution." (Dkt. No. 45-3, par. 7).

Christopher Moore's affidavit ("Moore") corroborates that Wilson used an open hand to hit the Plaintiff in the neck or face." (Dkt. No. 45-4, par. 4). Daryl McGhaney's affidavit ("McGhaney") shows that Wilson "used the least amount of force to keep an incident from getting out of control, in accordance with her training on use of force." (Dkt. No. 45-5, par. 6). McGhaney also noted that he "obtained the medical note of the Plaintiff following the incident, which showed no injury." Id. at par. 7; (see also Dkt. No. 45-5, p. 24). Luke agreed that "the medical record of where the mark was on the neck of the Plaintiff is consistent with where officers are taught to strike in such a situation," and "was consistent with acceptable law enforcement practices and training given the situation at the perceived time. (Dkt. No. 45-3, par. 10). Plaintiff testified he "went to the nurse one time and never went back," Cullins, Deposition, p. 98, and conceded he "would not have sought medical care if this happened to him on the street." Cullins, Deposition, p. 168.

Although Plaintiff alleges Wilson physically assaulted him for exercising his First Amendment rights, no First Amendment violation occurred. The evidence reveals that Plaintiff failed to comply with Wilson's orders. Thus, there was a need for the application of force, as Plaintiff was non-compliant, and the minimal amount of force used did not exceed training guidelines, did not cause substantial injury to the Plaintiff, and was applied in a good faith effort to maintain order and restore discipline. Thus, the undersigned recommends granting Defendant's Motion for Summary Judgment on Plaintiff's excessive force claim.

3.    *Conspiracy claim*

Plaintiff alleges that Wilson and Defendant Graham conspired to "cover up the incident."[2] Wilson denies that she conspired with other Defendants, or attempted to cover up the incident. Plaintiff counters in his Reply that Wilson and Graham's affidavits had "a grate (sic) similarity in wording." (Dkt. No. 63, par. 37). He also asserts that Graham was terminated after Graham wrote the affidavit alleging Wilson threatened or pressured him. (Dkt. No. 63, par. 109-110).

Section 1983 includes protection against conspiracies to violate civil rights. "To establish a civil conspiracy under § 1983, Plaintiff "must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Furthermore, under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This requires a "plausible suggestion of conspiracy," Twombly, 550 U.S. at 566, and Plaintiff needs to plead facts that would "lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan," Hinkle, 81 F.3d at 421.

As the United States Supreme Court recently explained, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. at 1949-1950.

---

[2] The undersigned will address this claim as it applies to Wilson, and will address the claim against Defendant Graham below.

13

McGhaney oversees the daily operations of the SLRDC, (Dkt. No. 45-5, par. 1), and alleges the Director of SLRDC asked him to investigate Plaintiff's grievance, submitted after the incident. Id. at 3. McGhaney asked all officers involved to prepare another statement. Id. at 4. According to the affidavit submitted by McGhaney, none of the Defendants "had any involvement in the investigation, or [were involved in] scheduling a hearing on the charge against the Plaintiff." Id. at 8.

Wilson corroborates McGhaney's statements indicating that she "completed an incident report immediately after the incident involving Plaintiff, and also prepared a second statement when asked to do so by McGhaney. (Dkt. No. 45-2, par. 20). Wilson also avers she never saw Defendant Graham's statement from the incident. Id. at 22. Likewise, Defendant Moore alleged he was also "asked to prepare a statement that explained [his] recollection of what occurred and he was not involved in the investigation of the incident. (Dkt. No. 45-4, par. 7-8).

McGhaney states that he was "advised that Officer Graham had given a statement to the Plaintiff indicating that Officer Wilson had pressured him to put certain things in his incident report to cover up the incident." (Dkt. No. 45-5, par. 11) (Dkt. No. 45-5, p. 26). Wilson denied Graham's allegations. (Dkt. No. 45-2, pp. 15-17). McGhaney spoke with both Wilson and Graham, (Dkt. No. 45-5, par. 12), but "could not find evidence of a cover up." Id. at 13.

Plaintiff has failed to plead sufficient facts to establish that Wilson conspired against him. Nothing in the evidence suggests that Wilson and others operated "in concert," nor does the evidence establish that any "overt act" was carried out. To the contrary, the statements of Wilson, (Dkt. No. 45-2, pp. 15-17), and Graham, (Dkt. No. 45-5, p. 26), differ

14

on whether Wilson attempted to influence Graham, and after an investigation by McGhaney, no evidence of a cover up could be established. Indeed, the Complaint seems to make the bare, conclusory allegation that Wilson and Defendants conspired to violate Plaintiff's Constitutional rights, and that the conspiracy culminated in fabricated testimony against him. If so, then the testimony of Graham would support Wilson's testimony. However, that is not what the evidence reveals. Furthermore, no common purpose is alleged and nothing beyond conclusory allegations of conspiracy are made. Plaintiff's allegations do not permit the undersigned to infer more than the mere possibility of misconduct. This is insufficient to state a claim to relief which is plausible on its face. It is therefore recommended that Defendant's Motion for Summary Judgment on the conspiracy claim be granted.

### 4.    Administrative Segregation/Due Process claim

Plaintiff alleges Defendants and Wilson were responsible for his placement in punitive segregation after the incident, without due process.[3] He further claims in his Reply to Wilson's Motion for Summary Judgment that Wilson's defense that she was responding to Plaintiff in order to maintain the security of the pod was "invoked for the purpose of summary judgment." He also complain in his Reply that he did not receive a hearing, or a warning. (Dkt. No. 63, par. 91, 93, 96).

As a pretrial detainee, Plaintiff has a due process right against restrictions that amount to punishment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, conditions of confinement that are imposed for, and reasonably related to, a legitimate government

---

[3] The undersigned will address this claim as it applies to Wilson, and will address the claim against Defendants below.

15

interest do not amount to punishment. Id. at 538-39. Furthermore, conditions of confinement for pretrial detainees are not limited to those "that are, strictly speaking, necessary to ensure that the detainee shows up at trial." Id. at 540.

"[P]rison officials are entitled to impose upon a detainee whatever restrictions or disabilities are reasonably necessary to ensure the internal security of the institution." Brogsdale v. Barry, 926 F.2d 1184, 1190 (D.C.Cir.1991). Indeed, "prison officials have a corresponding *duty* to exercise reasonable care to prevent prisoners from intentionally inflicting harm or creating unreasonable risks of harm to other prisoners." Id. at 1190 n. 7 (internal quotation marks, emphasis in the original and citations omitted).

To establish a right to due process, a pretrial detainee must demonstrate either 1) an "expressed intent to punish on the part of detention facility officials" or 2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. Bell, 441 U.S. at 538-39.

Thus, being required to comply with an administrative restriction or condition that adversely affects a pretrial detainee is not "punishment" if it is "reasonably related to a legitimate governmental objective" such as maintaining institutional order and safety. Bell, 441 U.S. at 539–40. However, if the restriction or condition is deemed punishment, a pretrial detainee has the right, under the Due Process Clause, to—at a minimum—notice and an opportunity to be heard.

Even so, it is unclear whether county jails, which have limited financial resources and generally hold individuals for short periods of time, are required to give pretrial detainees full due process protections. Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (explaining that: "Due process is flexible and calls for such procedural protections as the

16

particular situation demands").

Plaintiff appears to believe he was entitled to due process simply because he was placed in administrative segregation. Wilson counters that she was not responsible for Plaintiff's placement in administrative segregation.

Although Wilson charged the Plaintiff with disrespecting an officer, (Dkt. No. 45-2, par. 16); (Dkt. No. 45-5, par. 9), she was not involved with, and did not know the outcome of, the investigation of Plaintiff. (Dkt. No. 45-2, par. 18). McGhaney testified that none of the Defendants were responsible for scheduling a hearing on the pending charges. (Dkt. No. 45-5, par. 8). Plaintiff was detained in segregation while the charges against him were being investigated, Id. at 9, and were dismissed due to conflicting statements concerning the events that took place, not because the charge was improper. Id. at 8 and 9. Because the charge was dropped, and Plaintiff was released from segregation, no hearing was required. The segregation was not intended for the purpose of punishing the Plaintiff, and there was a legitimate administrative purpose - the investigation - for placing him there.

Thus, Plaintiff's subjective belief that he was placed in segregation as punishment without due process, is called into question. The Complaint alleges no factual allegations supporting a reasonable inference that Wilson acted to punish the Plaintiff or for any other illegitimate reason, since she was not involved with his detention. Rather, it is clear that Plaintiff understood why he was being placed in administrative segregation. Based on a concern that Plaintiff violated institutional rules, he was temporarily placed in segregation pending an investigation, to prevent him from intentionally inflicting harm. After the investigation, Plaintiff's charges were dropped, and he was released from segregation. It is therefore recommended that the Defendant's Motion for Summary Judgment on the due

process claim be granted.

**B.    Motion for Summary Judgment filed by Defendants Graham and Evans (Dkt. No. 46)**

Defendants Graham and Evans allege they have not violated any of Plaintiff's Constitutional rights. Specifically, Graham denies that he failed to protect Plaintiff. Graham and Evans deny that they covered up the incident that took place on May 10, 2012. Graham and Evans also deny that they violated Plaintiff's due process rights. Evans denies condoning the alleged assault against Plaintiff or violating Plaintiff's right to "be free from unreasonable punishment."

*1.    Failure to Protect Claim*

Because Plaintiff is a pretrial detainee his § 1983 claim against Graham for failure to protect is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

As a practical matter, however, courts do not always distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim. Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir.1992); Belcher v. Oliver, 898 F.2d 32, 33 (4th Cir.1990). Despite the Supreme Court's suggestion that pretrial detainees may be afforded greater protection than convicted prisoners, the circuit courts have generally analyzed both situations under the same "deliberate indifference" standard. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir.1996); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir.1996) (en banc); Zarnes v. Rhodes, 64 F.3d 285, 290 (7th Cir.1995); Hill, 979 F.2d at 991 n. * (citing cases); Johnson v. Busby, 953 F.2d 349, 351 (8th Cir.1992); Bass v. Jackson, 790

F.2d 260, 262-63 (2d Cir.1986).

The deliberate indifference standard has been applied by the Supreme Court pursuant to the Eighth Amendment in prison cases of two types-those that address "conditions of confinement" and those that address "excessive force". In the latter cases, a plaintiff must show "that officials applied force maliciously and sadistically for the very purpose of causing harm." Farmer v. Brennan, 511 U.S. 825, 835, (internal quotation marks and citations omitted). However, that "standard of purposeful or knowing conduct is not ... necessary to satisfy the mens rea requirement of deliberate indifference for claims challenging conditions of confinement; 'the very high state of mind prescribed by Whitley does not apply to prison conditions cases.'" (citations omitted) Id. at 836. Instead, the "conditions of confinement" cases assessed various acts or omissions by prison officials in the routine administration of their facilities that caused prisoners to suffer harm. Estelle v. Gamble, 429 U.S. 97 (1976); Hutto v. Finney, 437 U.S. 678 (1978); Rhodes v. Chapman, 452 U.S. 337 (1981); Wilson v. Seiter, 501 U.S. 294 (1991); Helling v. McKinney, 509 U.S. 25 (1993); and Farmer v. Brennan, 511 U.S. 825 (1994).

In Farmer, the Supreme Court defined "deliberate indifference" for prisoner litigation under the Eighth Amendment. The Court began by observing that a prison official's "deliberate indifference" to "a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. An Eighth Amendment claim must articulate both an objective and a subjective component. Id. at 834. To satisfy the objective component, the plaintiff must show that an injury is sufficiently serious. "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (quotation omitted). The second component of an Eighth Amendment claim is subjective. It requires

19

that the defendant have had a sufficiently culpable state of mind. Id. "In prison condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (citation omitted).

In the Motion for Summary Judgment filed by Defendants Graham and Evans, Graham alleges that when he "was entering Kilo Pod, [he] saw [Plaintiff] walking do[w]n the stairway and [he] got in [Wilson's] face and started pointing his finger in [Wilson's] face. [Wilson] told [Plaintiff] to get our of her face. [Plaintiff] didn't move. [Wilson] then grabbed [Plaintiff] and pushed him." (Dkt. No. 45-5, p. 12). At that point, Graham alleges that "[Moore] grabbed [Wilson]  while I ... grabbed [Plaintiff]. When [Evans] entered Kilo Pod, she told me to pack [Plaintiff's] belongings and escort him to Bravo Pod." Id.

Contrary to Graham's testimony, Plaintiff testified that Graham never touched him. (Dkt. No. 46-2, p. 88). Plaintiff also indicates that, during the time he was being escorted by Graham to Bravo pod, Plaintiff wanted to know "Who is that lady that hit me?" Id. at 94. Plaintiff states that Graham claimed he didn't know, but eventually gave Plaintiff Wilson's name. Id. at 94-5. Plaintiff testified that, prior to Graham refusing to give him Wilson's name, he "didn't have a problem with Graham." Id. at 190. Thus, Plaintiff's claim that Graham failed to protect him is based solely on the allegation that Graham did not, at first, supply Plaintiff with Wilson's name.

This fact, standing alone, is insufficient to support a claim that Defendant Graham failed to protect the Plaintiff. Even if Graham had failed to give Wilson's name to the Plaintiff, the omission would not have caused a "serious injury to Plaintiff," nor would it have resulted in the "denial of the minimal civilized measure of life's necessities." Plaintiff's allegations do no meet the first prong of the Farmer test.

20

Additionally, there are no factual allegations which would suggest that Graham was deliberately indifferent to Plaintiff's safety. The testimony revealed that after Plaintiff was struck by Wilson, Moore grabbed her. There are no allegations that any other officer or inmate was attempting to harm the Plaintiff. Consequently, there was no reason for Graham to intervene. Graham testified that he "grabbed Plaintiff," while Plaintiff denies that Graham did so. In either case, Plaintiff admits that he did not "have a problem with Graham" except for Graham's hesitation to reveal Wilson's name. It is therefore, recommended that Defendant's Motion for Summary Judgment on this claim be granted.

2.    *Conspiracy Claim*

As previously noted, in order to establish a civil conspiracy under § 1983, Plaintiff "must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).

Plaintiff claims that Graham conspired with Wilson to cover up the incident on May 10, 2012. Much of the evidence concerning Plaintiff's conspiracy claim has already been addressed in Wilson's Motion for Summary Judgment, above.

Nonetheless, in Graham's Motion for Summary Judgment, he reiterates that Plaintiff has failed to plead any set of facts that identify a Constitutional right of which he was deprived as the result of the alleged conspiracy. The undersigned agrees, as many of the facts which Plaintiff raises pertain to Wilson, not to Graham. Additionally, although McGhaney stated that he was "advised that Officer Graham had given a statement to the Plaintiff indicating that Officer Wilson had pressured him to put certain things in his incident report to cover up the incident," (Dkt. No. 45-5, par. 11) (Dkt. No. 45-5, p. 26), McGhaney

21

spoke with both Wilson and Graham, (Dkt. No. 45-5, par. 12), and "could not find evidence of a cover up." Id. at 13.

Furthermore, and more importantly, no common purpose has been alleged by the Plaintiff, nor has the Plaintiff pointed to any overt act in which Graham participated. Even if Plaintiff could establish a purpose, or identify an overt act, he has not identified a Constitutional right which was violated. The bare allegations against Graham are insufficient to state a claim to relief which is plausible on its face. It is therefore recommended that Defendant Graham's Motion for Summary Judgment on the conspiracy claim be granted.

       3.     *Administrative Segregation/Due Process Claim*

Plaintiff claims that Graham and Evans deprived him of his right to Due Process and improperly placed him in Administrative Segregation. In order to prevail on such a claim, Plaintiff must demonstrate either 1) an "expressed intent to punish on the part of detention facility officials" or 2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. Bell, 441 U.S. at 538-39.

Defendants Graham and Evans maintain that they did not participate in either the investigation of the charge, or in the decision to hold a hearing or dismiss the charge. This was corroborated by McGhaney who stated that "[n]one of the Defendants in this action had any involvement in the investigation, or [in] scheduling a hearing on the charge against the Plaintiff. (Dkt. No. 45-5, par. 8). Defendants add that "[t]he investigation of the charges asserted by Wilson and the determination of whether to go forward with a disciplinary hearing were handled by administration at SLRDC, namely Simon Major, and Darrell (sic) McGhaney." (Dkt. No. 46-1, p. 3). McGhaney's affidavit states that he "discussed [his]

22

investigation with the Director, and we both agreed the use of force was appropriate to insure the safety and security of the pod, based on what the officer perceived at the time. However, the Director told me to dismiss the charge of disrespecting an officer, due to the different versions of what happened. The Plaintiff was then moved back to an open pod. Since the charges were dismissed, there was never a hearing on these charges. However, the Plaintiff's due process rights were protected by performing an investigation of the charges against him and holding him in lock-up during the investigation." Id. at 8.

This evidence reveals that there was no express intent to punish the Plaintiff. The administrative segregation of the Plaintiff was based on a legitimate, non-punitive administrative purpose. Plaintiff has failed to make a showing to the contrary. Therefore, summary judgement should be granted to Defendants' Graham and Evans on this claim.

4.    "Failure to Take Action" Claim

Plaintiff claims that Defendant Evans failed to take action against Wilson. Plaintiff believes it was incumbent upon Evans to take disciplinary action against Wilson for her role in the altercation. Defendant Evans counters that she did not witness the assault. According to her affidavit, when she arrived at Kilo pod "C/O Moore informed me that [Plaintiff] came down the stairs at [Wilson] pointing his finger in [Wilson's] face." (Dkt No. 45-5, p. 11). Furthermore, Evans argues that she has no Constitutional duty to Plaintiff to discipline Wilson. The undersigned agrees with the Defendant Evans. The evidence establishes that it was the responsibility of McGhaney and Simon Major - not Evans - to evaluate Wilson's conduct, and to take action accordingly. (Dkt. No. 45-5, par.  3 and 8). Consequently, summary judgment should be granted for Defendant Evans on this claim.

**C.    Qualified Immunity**

Defendants argue that they are entitled to qualified immunity from all claims as a matter of law. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(citations omitted). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 232 (2009) citing Saucier v. Katz, 533 U.S. 194, 201 (2001).

Plaintiff has failed to establish that Defendants have violated his First Amendment rights as verbal abuse by a prison guard does not give rise to a cause of action under § 1983, and the Plaintiff does not have a First Amendment right to violate a legitimate prison regulation. Plaintiff was also not subjected to excessive force by Defendant Wilson as Plaintiff was non-compliant with verbal orders, the minimal amount of force used did not exceed training guidelines and did not cause substantial injury to the Plaintiff, and the force was applied in a good faith effort to maintain order and restore discipline. Plaintiff has also failed to establish that Wilson and Defendants had a common purpose, and engaged in an overt act, such that they violated Plaintiff's Constitutional rights in order to conspire against him. Plaintiff's Due Process rights were not violated when he was temporarily placed in administrative segregation pending an investigation of the charges against him.

Plaintiff has failed to establish that Defendant Graham failed to protect him when he initially declined to provide Plaintiff with Wilson's name. Plaintiff has also failed to establish that Defendant Evans had a duty to discipline Defendant Wilson. Since Plaintiff has failed to make the requisite showing that his Constitutional rights were violated, Wilson and Defendants are entitled to qualified immunity on all claims presented.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Motion for Summary Judgment filed by Defendant Wilson (Dkt. No. 45) be GRANTED. It is further RECOMMENDED that the Motion for Summary Judgment filed by Defendants Graham and Evans (Dkt. No. 46) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

May 16, 2013
Charleston, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).